Mr. Sharma pled guilty to three different crimes, two of which are germane to this appeal. Those crimes are the distribution of child pornography and the receipt of child pornography. And his complaint in this case relates to portions of the sentencing guidelines that were used in his sentencing, which violate the Due Process Clause because they are arbitrary and unrelated to a legitimate government purpose. Counsel, let me ask you this. Interesting argument, but what authority do you have, case law authority, from any court of appeal that would buttress your position? It's an interesting position, but your own client seems to have conceded that the more images that are there, the more culpable somebody is. So what's your argument? My argument as to that, I don't have a lot of case law to cite to you, but I can at least relate the argument to you. There's two problems with the number of images. Your client had 275, that was the admitted number? Yes. The number of images is only, let me start that in a different place. The goal of this law is to protect children, and the number of images can only be rationally related to a legitimate government purpose if it achieves that goal. And the way this guideline is structured, it does not, because having 175, 275 images does not reflect the harm that was caused or the potential for harm caused, and there's two reasons for that. And it ignores, one of those reasons is that it completely ignores the modern way in which people download child pornography. People go into a chat room or someplace on the internet, and in a few mouse clicks, they download between, they can download 10 images that they've never looked at, or 1,000 in 10 images. So why would it be irrational, even if things have changed since the Sexual Crimes Against Children Prevention Act of 1995 with regard to technology, why would it be irrational to say if we, through the guidelines, can put into effect even a minor amount of deterrent from using these means of incredibly wide harmful distribution of child pornography, even if there is only an incremental increase in deterrence, why would it be irrational to have something out there for distributors of child pornography that says, we want to warn you, if you use computers, you're going to get more time, don't do it? Because that, it's so much easier to catch somebody who is committing these crimes if they use a computer. I mean, the whole logic of, we've switched to the other, sort of the flip side. But that would have been true when they enacted the law, right? Sorry, sir, but I disagree with that. That law, that portion, the use of the computer portion was enacted in 1995. Cybercrime was in its infancy. Law enforcement had almost no idea how to detect these crimes. Now, we're talking 29 years later, law enforcement is incredibly sophisticated at how they track these crimes. They have programs where they can watch IP addresses and they can watch the SHA value of an image that's being transferred back and forth. They didn't, nobody knew what a SHA value meant in 1995. You don't think it increases the harm to the victims that child pornography images of them can be seen by 1,000 or 100,000 people as opposed to 5 or 10? You don't think that even, that it's, you think it's irrational to say that deterring that wide distribution helps the victims even if only a little? I don't think there's any evidence to support the notion that it has any deterrent effect. Well, that's a different, it's a different question. There is deterrent effect, rational basis, and then there is, even at a slight level, alleviating harm if you can have fewer images distributed. That the harm is greater when thousands of people are seeing it as opposed to scores of people. But that's not how, I mean, that is one argument of the guidelines, but that's frequently not how they're employed. I mean, the other problem and why the number of images is irrational is because if a person has 275 images taken of the same person during the same abusive event, that is one, that's encapsulating one circumstance, but a different person could have 275 discrete and different images of different individuals on different occasions, and yet those people are being punished the same, and that's not logical. Counsel, we review this for abusive, excuse me, we look at this on a rational basis, right? Yes. That's the standard review? Yes. So, given that low standard, even if your argument has an intellectual appeal to it, don't you lose based on the fact that the folks who came up with this standard were acting rationally? Isn't that the end of the story? No, I don't think so, because I think they were acting rationally at the time. Well, Ms. Daly, usually when you're bringing a facial challenge, and do you have any rational basis case we can cite to where we revisit the rationality? Typically when courts invalidate legislation, the enactment of legislation for being irrational, it's because it's irrational at the time. That's how they speak of it. Is there any case that allows us to revisit on the face that the enactment was unconstitutional later, even if it was constitutional at the time? Courts regularly revisit and consider changes in the law and changes in society and changes in technology. The first one that comes to mind is Plessy v. Ferguson gets overruled by Brown v. Board of Education because society had changed, and the courts look at things differently. Okay, but that's equal protection, and that was overruling, so we're looking for a rational basis. Is there any law that you can point us to where a court has said even if it was rational when enacted, it is irrational now? I do not have a cite for you. Counsel, with regard to the numbers, it sounds like you're saying any division based on the number of images would be irrational no matter where the line was drawn? I think there has to be a nuanced division of the numbers. But you agree that some numerical division would be rational? I agree it could be. So would a million be rational? I don't think an arbitrary – you know, I was thinking about this. It's not like the drug guidelines where there's a clear correlation between this much drugs could cause this much harms, and it's not like the fraud guidelines where this much money equated this much loss. Because of the example that I gave where somebody could have 275 images. It could be the exact same picture copied 275 times, which is very different than having 275 pictures of 275 different people on discrete occasions. But, Ms. Daly, on a facial challenge, I mean, you're not challenging the substantive unreasonableness of the sentence as applied to your client, correct? Correct. So on a facial challenge, if one is constitutional and you might be able to identify some unconstitutional applications of the law, why don't you still lose? Because it's still irrational. Well, the facial challenge means, I believe under the Salerno test, it has to be unconstitutional in all of its applications. I can't – I'm not – apologies. I'm not prepared to address that, Your Honor. But isn't the point made by my colleague kind of a real problem for your – it's a facial challenge. You've got to show that under no circumstances does this make any sense. As I look at your pleading, it seems like your client seems to concede that at some point, as my colleague suggested, it's okay. You didn't say what the number would be, but that the increased number makes a difference. You bear the burden of proof, right, to show that it's irrational in all circumstances because it is a facial challenge, right? Correct. So why isn't that fatal to your claim? Because he shouldn't have conceded that. But he did. He did. No, I agree. He did. It is – I mean, it is a significant problem to his argument. Ms. Daly, what would be the – I'm trying to understand maybe the limited principles of your argument if we agree with you here that this sentencing scheme is irrational. The sentencing report that you cite suggests that there are some other provisions of the child pornography guidelines that need to be changed or updated because they don't fit. Are those in danger? So, for example, it criticizes the images depicting previovescent minors, which is also widely applied. Would that be unconstitutional? Potentially, yes. I mean, there's any number of – I mean, these guidelines are deeply problematic, right? Well, I guess that's kind of our concern. If there's any – if you're asking us to plant the first flag for irrationality with respect to sentencing guidelines in this area, we might want to know where that argument stops in terms of all of these guidelines that might have been drafted a few decades ago under one society and now must be applied now. If that's the argument, why isn't there a general requirement that any out-of-date guideline be struck down as irrational? Well, because not all of these guidelines are out-of-date. I mean, if you're – I have 2G2.2 in front of me, and it's only a discrete number of them that are out-of-date. Pecuniary purpose is not out-of-date. Distribution in exchange for a thing of value is not out-of-date. The offense involving distribution to a minor is not out-of-date. Would the crack cocaine sentencing scheme that the U.S. Supreme Court upheld in Armstrong be subject to an irrationality challenge here? You've talked about drugs being a different issue. I'm not sure, based on Judge Bennett's theory of harm here, that they are that different of an issue. But drugs are far more potent, widespread. They can be split into many more doses now. When the court – when the Supreme Court was presented with an issue suggesting that the crack cocaine sentences were unconstitutional because there's a difference between that and powder, they rejected that. Despite the fact that the drug market had changed and that some people were being sentenced for far more harshly than others, why is – why does that not control this case? I can't answer that because I don't have the rationale of Armstrong at my fingertips, so I can't – I'm sorry, I can't intelligently respond to your question. I'll save the balance of your time for rebuttal. Thank you. Yang. May it please the Court, Roger Yang for the United States. This Court should hold that Congress had a rational basis when it added the computer enhancements and the number of image enhancements to the sentencing guidelines, and therefore they satisfy due process. Mr. Yang, with respect to the computer enhancement, can you identify any other enhancement that applies to nearly every conviction? Yes, Your Honor. In the 2012 report, the Sentencing Commission did the statistical research and found that the prepubescent minors enhancement applied in over 90 percent of the cases. Back in 2009, when the Sentencing Commission was discussing the history of the guidelines, at that time the computer enhancement already applied in 89 percent of the cases. But these are not arguments that there is no rational basis for these enhancements. These are arguments that, say, raising the base offense level to account for the ubiquity of computers or adjusting the table to a higher range, that those are better enhancements or a better sentencing scheme. Not that there is no rational basis. Counsel, going back to something that you said that ties to a question some of my colleagues asked your friend, is it the government's view that whenever a statute is enacted, if it's rational at the time, then it's rational forever? Or why wouldn't we judge whether it's still rational today? Is the government's position if it was rational in 1995, that settles it forever? Essentially, yes, Your Honor, because whether or not there is a rational basis must be overcome by the appellant, and the appellant must show that there is no longer any rational basis. Right. But my question is, don't we look at that now? I mean, the government isn't saying that whether a statute is passed in 1995 or 1895, all we look at is whether it was rational at the time. Don't we have to look now to see whether it's rational? I mean, it's a very forgiving test, but wouldn't it be relevant as to whether it's rational now, not 30 or 130 years ago? The cases discussing rational basis do allow for the appellant to, at some point, overcome rational basis, to demonstrate conclusively, without any doubts, that there is no longer a rational basis. However, in this specific case, these are simply arguments for a better sentencing scheme, and these are considerations and decisions for Congress, not for the courts. I was going to say, in this case, you have Sharma claiming on a facial challenge, meaning that there are no circumstances in which this makes no sense, that this law is unconstitutional, and yet he himself concedes that there is a rational basis. The greater number of images, the more the problem. Doesn't that pose a fatal problem for his claim? Yes, Your Honor. And the Eighth Circuit in 1999, in United States v. Vincent, recognized that the computer enhancement has a rational basis. It is now easier to copy, produce, and distribute child pornography. This is easier than ever, and we're seeing by our experience with this guideline. And that Vincent case actually quoted the Ninth Circuit's case in United States v. Fellows, which went through why Congress passed or directed the Sentencing Commission to enact this two-level guideline. As a matter of fact, isn't there just common-sensical argument that my colleague referred to earlier, that the fact that this is potentially hundreds of thousands of people that could see something rationally, that makes perfect sense that Congress would want to penalize that more? Correct, Your Honor. And, in fact, in United States v. McInerney, the Sixth Circuit in 2011 specifically stated that just because a sentencing guideline applies in almost every case is not a reason to reject the sentencing guideline under rational basis. And it specifically had to do with the table in 2G 2.2b7. And so — and it also recognized that only Congress can change these guidelines. And I think the Court's experience with the 101 crack-to-cocaine — crack-to-cocaine-to-powder-cocaine ratio also informs this discussion, because the Supreme Court refused to overturn that ratio on due process grounds and waited until the sentencing guidelines were discretionary to create essentially Kimbrough discretion as a solution rather than address the due process claim. Because every court to address the issue on due process and rational basis grounds rejected those claims. And it was only until Congress acted in 2010 with the Fair Sentencing Act that the 101 crack-cocaine-to-powder-cocaine ratio was essentially undone, because the rational basis from the original 1986 enactment continued all the way through until Congress undid its work in 2010. But doesn't that buttress the government's position in that when you could see that, I think in that particular instance, it largely adversely impacted African American defendants, if I recall the statistics correctly, but the commission couldn't change that. Congress had to change that, and they did, based upon new input that they had. And arguably that's what needs to happen here if the government's correct. Is that right? That's correct. The government's position is that Congress needs to – let me back up. The sentencing commission's report, the U.S. Department of Justice's letter, they were all addressed to Congress, because everyone recognizes that Congress needs to act. And until Congress acts, we are examining this solely on rational basis. The rational basis for these enhancements existed and continues to exist to this day. And as a result, under rational basis, this Court should uphold the – say that due process is satisfied and uphold these sentencing enhancements. If we didn't follow that, wouldn't that basically open up a Pandora's box? Any time a panel of appellate judges thought that a law was old-fashioned and that they were just out of touch, we'd say, hey, this doesn't make any sense anymore. We're going to declare it unconstitutional. Right. Under separation of powers, as the Supreme Court recognized, starting with Chapman, continuing to Neal, and then further with Labonte, the Court's role is to look at Congress and see what Congress meant. When the Sentencing Commission issued reports and even concluded, for example, that Congress's approach regarding the LSD blotters, et cetera, was irrational, the Supreme Court specifically told the Sentencing Commission, you must yield to Congress. Counsel, does it matter? You can correct me if I have this wrong, but the defendant's guideline was life, right? That's correct. And the government recommended 330, right? Yes, Your Honor. And the court did 288. Yes. So does it matter in terms of our evaluation of whether the guidelines have a rational basis that both the government and the district court, even with a really high guideline because of these increases, still has the ability to vary downward? Does that factor in to whether the scheme itself has a rational basis or are those things totally separate in the government's view? And the fact that the courts have the ability to vary downward or to depart downward doesn't factor into whether the guidelines are rational. The government's position is that these are two separate considerations, but even Henderson, Dorvey, and Grover didn't go to take that additional step of finding that these sensing enhancements and the sensing guidelines in total violated due process. They simply used Kimbrough and Kimbrough discretion to explain that the courts can exercise their discretion with regard to the application of the guidelines, and that's a separate question from whether or not there's a rational basis. And, in effect, the ability of the court to vary or depart is, in effect, the as-applied version of this, right? That's correct, Your Honor. If the defendant in this case had been able to convince the judge, you ought to really go down much, much more on the judge. I agree with you. The judge could have been thinking in part, you know, I think the fact that they had all these images there, that it's not something that penalizes the defendant for, so I'm going to vary. Isn't that correct? In a way, yes, Your Honor, but this district judge was very specific that he did not have a policy disagreement with the guidelines. I know that's what he said. I'm just saying, hypothetically, the sentencing judge could take into account the arguments made by learning counsel and say, gee, this is just not fair. And I believe that the 2021 update by the Sentencing Commission regarding the statistics show that judges are exercising their sentencing discretion in this matter. Mr. Yang, I guess we've got so in the First Amendment context, there's the over-breath doctrine that allows someone to challenge on its face a law that is concededly constitutional as applied to them. Sharma seems to maybe viewed as conceding that the law is constitutional as applied to him. Why didn't the government challenge his standing to bring the facial challenge? Because there is no First Amendment over-breath issue. This is a due process challenge. Well, in a way, the government believes that this is an issue that's been percolating up through the courts and should be addressed in the proper case. In terms of the briefing, this was squarely addressed, and the government believes that this is an appropriate case to go ahead and hold that, yes, these enhancements do, in fact, satisfy due process. Because as you say, that's where the district court started with and agreed with the enhancements here. So they are in play with respect to Mr. Sharma as well? That's correct. Can you help at all any ideas in terms of the question of whether, when we examine whether a law has a rational basis, it strikes me that most of the substantive due process cases involve courts looking at old-fashioned laws and, when they're successful, saying that they no longer have a rational basis laws, whether you're talking about the Lawrence, some of those cases. Do you have any help for us in terms of the best way to frame it? I think in the brief there are some arguments that we need to look at the law when it was enacted, but I think you'd suggested that we can look at changes over time, and some of the cases suggest that as well. What should we do here? The government's position is that in, for example, Lawrence or Plessy v. Ferguson or Brown v. Board of Education, those cases were overturned on strict scrutiny because there was either some sort of specific discriminatory intent based on a protected class or some other grounds for reaching a higher standard for evaluating whether conditions had changed to the point where either equal protection or substantive due process was violated. Here we have a broadly applicable, race-neutral, there's no other discriminatory intent for these enhancements. They're broadly applied. They're evenly and neutrally applied. And therefore, we should default to rational basis and evaluate these incentive enhancements on those — on that basis. Obviously, if we were talking about broader societal concerns and some — on some other consideration that may result in scrutinizing Congress's intent with regard to discrimination against a protected class, then we'd be in a different realm. But here we are here for rational basis because there's absolutely no evidence of that type of discriminatory intent. Thank you. Thank you very much. Very well. Ms. Daly, you have some rebuttal time. Thank you. One of the factors in 3553 is to promote respect for the law. And if the goal of these laws is to protect children and protect society, then people have to understand them and understand the logic behind them. And as these laws are currently written, or at least as these sentencing enhancements are currently written, they're not understandable or acceptable, I think, to the average person. Let me ask you what I ask your opponent. There are lots of laws that Congress has passed over the years, lots and lots of them. And if you look at them based on current views in society, a goodly number of them would seem just nonsensical. What you seem to be suggesting is that we three or any three judges on the Ninth Circuit or any other comparable court can just say, you know, this is old-fashioned. Let's get rid of it. It's not rational anymore. It may have been rational when Congress passed it, but it's not anymore. Isn't that what you're advocating? I guess you could view it that way. But with every passing day and more improvements in technology and changes, these laws become less and less rational and therefore less constitutional. But you are making us, the judiciary, the decision-makers, if you will, on something that has been on the Constitution placed with the legislature and the executive. Doesn't that create a separation of powers issue? I mean, you could make us philosopher kings, I guess. But the reality is that's not the way our government's structured, is it? It's not. But you are the people in charge of deciding whether or not this is rationally related. Well, on that, why doesn't the, I guess, to pick up on Judge Bennett, now that you've had some time to think about it, why doesn't the fact that the images are more widespread and easier to disseminate and this goes to, I think, both of your challenges, the fact that they apply in the vast majority of the cases, why doesn't that just tell us that the harm is all the greater than it was back then? What's your argument that the harm from either scenario of the images being spread is not scaled to the number of those images that are now out in the public? Because there's no, the number of images, the number of images is illogical and the breaks in the guidelines for when the guidelines go up, there's no, how is, how is Well, the breaks, I think you've got a problem with the breaks because that's true of all sorts of sentencing schemes. Talk about the harm in terms of, on the computer side. Because 275 copies of the same image is equally as harmful as one copy of the same image. The harm is, if every person has a copy of the same picture or one person has a copy of the picture, the victim is still harmed. Other questions by my colleague? Thanks to both counsel for your argument. We appreciate it. The case just argued is submitted. The court stands adjourned for the day.
judges: SMITH, BENNETT, JOHNSTONE